Your Honors, may you please support. There are several really important facts that I'd like to bring the Court's attention to in this case, the first being the percentage of African-American jurors who were challenged by the prosecution, 86 percent, which I would compare to the case of Miller L., where 91 percent of black jurors were challenged by the prosecution. I want you to keep your voice up a little bit, would you please? Sure, no problem, Judge Brey. So I would like to start with the percentage issue, where in this case there were 86 percent of black jurors were challenged, and in Miller L., 91 percent of black jurors were challenged. The second issue that I would bring the Court's attention to is the comparison between the black and the non-black jurors, which, again, is a factor in Miller L. and also in McLean, and I refer to it in my brief. Where does that get you? Well, when you have a situation where the prosecution is challenging, for example, in this case, a black doctor, while, you know, allowing a non-black doctor to sit on the jury, and then there's several other examples of the comparison. No, the percentage alone. You were talking about the percentage. Oh, the percentage. Where did the percentage get you? Well, the percentage is a relevant factor in the totality of the case. It's set forth in Miller L. Which case? The Miller L. case. No, no, I know that. Of determining what? Of determining whether there should be a justification or an explanation, or is it conclusive as to discrimination? What is it? That's a good question, Judge Schroeder, and I would say it's not conclusive. And I don't think Miller L. says it's conclusive. But I think it is a very, very strong factor. When you get into cases where you've got 86%, 91% of black jurors being excused, it's a very, very strong factor. And I think that's where Miller L. leaves it as well. And to continue. A factor for what? To require the trial judge to get an explanation, or what? Well, certainly to do more than what the trial judge did here, which is to say this is very iffy, but I'm going to let it go. So certainly more than that has to happen with 86%. Wouldn't that go to an intent to discriminate? Is it evidence of an intent to discriminate? Yeah. Yes. I mean, I think as Judge Schroeder said, it's not conclusive. If that's all we had, it would still be pretty strong evidence. But it is a very strong factor. And we're not talking like 50% or 40%. We're talking 86%. That's a lot of jurors to excuse. In your brief, you refer to some of these reasons given by the prosecutor as fairly stereotypical, that black women wear big earrings and loud dresses or things of that sort. Is that something we should take into consideration in determining whether such a high percentage, there is a strong showing that the percentage plus the reasons, which are stereotypical of white attitudes toward black people, shows prejudice? I think that's accurate, Judge Bright. Yes. Marlo, why don't you go over and let me know what you've got on these strikes, where you really think you've got a good case to supplement Miller L. Okay. And, again, it's sort of the totality, so I think it is useful to go into every one of these things that I brought up in my brief. So we started with Ms. F., the postal handler. And she was wearing a fur coat, even though it was warm outdoors, although we can assume it might have been air conditioned in here. It's actually pretty cold in here. And, you know, I talked about how that may have been a status symbol for her. She may have been feeling intimidated. That's in the Miller L. case. No, that's in our current case. Oh, that's your case. That's the postal. Which juror was that? That's Ms. F., the postal carrier. So she's wearing a fur coat, and she's wearing something sort of sparkly, and the prosecutor brings that up as a reason, you know, ostensibly racially neutral reason to excuse her. And I pointed out that I really didn't think that was racially neutral. And then we have another clothing from Ms. L., who is wearing ---- What, did he think she was a liberal? Is that it? I don't ---- I've seen a lot of people wearing fur coats in Las Vegas. I don't ---- That is not a ---- You think that's not a race neutral ---- I wouldn't say that that's a valid reason to excuse her, no. And I talked in my brief about historically how she may have felt intimidated in the courtroom and may have wanted to sort of, you know, wear something that would make her, bolster her confidence. Well, she was a postal mail handler. She wore a sparkling bandana, sunglasses, fur coat, agreed. And she agreed she was not very happy to be here, huh? And she did say that, didn't she? And the trial judge said that he referred to her sparkling bandana, sunglasses, fur coat on a warm day and that she was hostile. And she wasn't willing to work out a schedule, you know, with the postal department. Didn't that happen? I'm wrong about that. Well, actually, she stated that she could work out a schedule, but it would be a problem for her because she worked graveyard, so she might be really sleepy in the courtroom. Yeah, but that's kind of a normal condition, isn't it? Right. As far as the sleepiness goes, you know, I didn't challenge that. But as far as the clothing, especially when you compare it with Ms. L, who the judge found that her dress was totally appropriate, the prosecutor singled her out because she had ankle bracelets and he considered her pants too tight or something like that. And both defense counsel and the court said that her pants were completely normal. And it seemed like when the prosecutor had excused a lot of non-black jurors, nothing was ever mentioned about their clothing. It seems like these black women were being singled out for their clothing without putting it in an actual cultural context of what would be normal in their culture. And then you had Dr. N. He's a retired psychologist, licensed therapist, employed at Kaiser for addiction medicine. And he said he would be able to find the defendant guilty even if there were evidence of psychological problems. And he also admitted he had a DUI 30 years ago, said he could be fair. And the reason for striking him was by the prosecution. The therapists are liberal. And the defense was going to present psychological evidence. The juror would consider information learned outside the courtroom. And his arrest 30 years ago would affect him in the instant case. Well, I think he stated that the arrest would not affect him. And we're talking about an arrest that happened 30 years ago for DUI. No, no, I'm saying that's what the prosecutor said. Right, right, right. And then, you know, that kind of feeds into the comparison with a non-black doctor who also had, you know, training in the human psyche, as all doctors do. And Dr. N., the black doctor, was also a licensed marriage and family counselor, which would have probably made him a really good juror because, you know, you deal with conflict and you sort of have to resolve husband and wife conflicts as a counselor of that sort. And there was just really no reason to strike him. The court made no finding. The trial court did not make any finding as to the reasons offered to strike him. And that goes, again, to the McClain case and the Lewis case, which is the Lewis specifically states that the court has to make findings. The trial court can't say this is iffy, but I'm going to let it go, which is what happened here. And in addition, there's a whole exchange between the prosecutor and the defense counsel where the prosecutor says she's trying to get eight white males on the jury. And apparently there were eight or something close to eight white males on the jury. So this case, looking at all the circumstances. If we look at – see, I have some trouble here because of the standard. This is a bad – this is a – aren't we on habeas review here? Right. So we have to say that the trial court did something that was clearly really wrong. Right. We can't sort of say, well, maybe he shouldn't have said this is iffy with respect to one of the jurors. But – and so that violated clearly established law if there were race-neutral explanations for a lot of the others. I don't see how we can do that. I think Miller-Ell makes it really easy for us, Judge Schroeder, because Miller-Ell was the same case procedurally. It was a habeas case. And the court said, you know, in view of the 91 percent in Miller-Ell, we are going to say the trial court was wrong. And when you just look at the analysis that was done by the state court, there was no analysis of the percentage at all, either in the court of appeal or – Was it raised? No. I mean, it was raised by the defense, but not really analyzed by the court. The defense pointed out in the briefing that, you know, six out of seven of these black jurors were excused. It's not a question of having one juror excused. For example, in Collins v. Rice, that was an issue of just having one juror excused. But in this case and in Miller-Ell, you're talking about six out of seven or 10 out of 11 jurors. And that really needs to be addressed, and that hasn't been addressed by any court. Let me ask you this. How many prospective non-black jurors did the prosecutor excuse by exercising preemptory challenge? Gosh. Each side had 20. Right. I'm thinking it would have been, because I did read this whole thing, and she did a fair number, but I'm thinking it would have been about 12, although opposing counsel may correct me if I'm wrong. And then to compare this with Miller-Ell again, Miller-Ell was a five-week, five weeks to select the jury. So that's a lot going on. In this case, it was one and a half days to select the jury. That would give the court some idea of, you know, the entire pool of numbers. Well, then you also had five black jurors were struck by the prosecutor before the defense counsel made the first Batson-Wheeler objection. Right. That's kind of odd, isn't it? We've allowed you to go way over your time. We'll give you a minute on rebuttal, but we should hear from the government. Would you like me to answer your question, Judge Ferguson? Fine. Okay. Well, I think, if anything, if I put myself in the shoes of the trial court, that should really have told me that something wrong was going on, to see those five black jurors struck before the motion was made. I'll reserve my time. Thank you very much. Okay. Thank you. Good morning. I'm Beverly Falk, Deputy State Attorney General for Respondent and Appellee. You have a somewhat light voice, so speak right up with it. I don't know, is that amplifier, or is that just to record? It does amplify, but not a lot. Okay. Well, speak right into it. Thank you. I believe that now that Rice v. Collins has been decided, which occurred after our briefing, that the law is very much stronger in supporting the findings of the state court in this case. We've had findings by our state trial court hearing the Wheeler-Batson motion. We've had findings by our state court of appeal, findings by our state supreme court when it denied the petition for review. And we also have the findings of the district court. But that's not a finding by the supreme court when they deny a petition for review. It's adopting. The law has said that if the state court of appeal denies issues and opinion, then the state supreme court's ruling is deemed to be that of the state court of appeal. And it's deemed to be a ruling on the merits. Our state court of appeal. So that would control the entire State of California? I don't understand. It's not a published decision that's citable for other authorities. Is that, in other cases, is that what the Court is asking? Well, they haven't decided anything. They just said, well, we're not going to hear the case. Yes, but for purposes of Federal habeas review, you know, case law states that when the state supreme court denies a petition for review, that's deemed to be a ruling on the merits, adopting the reasoning. We look to the Court of Appeals decision as the last reasoned ruling. That's correct. We're reviewing. That's correct. We're not reviewing the Supreme Court. We're reviewing the Court of Appeals. That's correct. And in Collins, that was just one juror challenge, am I right? In the recent Supreme Court case. Well, Collins actually, as I recall, had originally two jurors challenged. And then they only followed through on one of the two. And in this case. One was concerned. Now, in this particular case, was it six out of seven blacks who were successfully challenged, 86 percent? It may have been. There was some uncertainty in the record, but that is probably. It was all but one. All but one black were challenged, and one was on the panel. There was some uncertainty, but I think that's true. All right. Is there any question in your mind, not as to what the prosecutor thought, not as to what the judge thought, but from people sitting out there and from the blacks who were on that venerey, that they were knocked off because they were black. And that is shown by the fact that the excuses were given as to each one, but cumulatively, it ended up where only the blacks who were on there were challenged as a group. Isn't that about the size of this case? I don't see that as true. The reasons that are in the record are valid. Well, anybody can make up reasons. You know, I once sat as a district court in a very educated woman from Harvard. The only black on the panel was challenged. And the challenge was, well, they're too liberal at Harvard. I just allowed the challenge, by the way. You know, it seems to me when you look at a case like this, one black challenged, good reason. Two blacks challenged, good reason. But when you get to all of them challenged on reasons that are a little shaky, it really adds up to a point of discrimination. Like, you know, body language. They didn't look me in the eye. You know, stuff like that. Well, body language is a valid reason. And the trial judge was there. We are not there. We didn't witness it. The trial judge ruled based on what the trial judge saw in the courtroom, based on what the parties argued, based upon what the prosecutor said were the reasons. And what's another? Well, you know, in Idaho they say it doesn't pass the smell test. It can happen that it just might. You know, it's by lot and everything. And it can just happen that the blacks in this particular jury group were. Well, you don't have to argue that, do you? I mean, you have specific jurors where there were some justifications made and there's certain deference that has to be given. I don't know. That's true. That's exactly right. And in fact, as to two of them, the defendant conceded on appeal that their challenges were correct, that there was a valid reason. That would be as to Ms. F and Ms. Y. There was a concession on the estate appeal. And in fact, what was interesting in Rice v. Collins was that where there had been a concession as to one of the two jurors in Rice v. Collins, the Petitioner did not follow through on the one that had been conceded. But here, for the first time here on appeal, Petitioner is endeavoring to argue the two that were conceded. Right. So this is kind of going back and redoing what the defense counsel should have done originally? Well, if the defense counsel had felt there was grounds and wished to argue it, the defense counsel could have done so. We can't redo the record. The prosecutor isn't here to explain the clothing, and the trial judge isn't here, and the defense counsel. Absolutely. If you don't make an objection about issues like that at the time, there's nothing we can do now to recreate it. Okay. What about the retired psychologist, licensed therapist who's employed at Kaiser? What about that gentleman, Dr. N? If I had been that prosecutor, I would have excused that gentleman because ---- Therapists are liberal. Well, but then he let the other doctor stay, didn't he? There was a family practice doctor who was not challenged, and there was this psychologist who had apparently devoted a career to substance abuse. And what we had in this case was very bizarre behavior by a defendant. The facts of the burglary are extremely bizarre. And the defendant, at the time the police showed up at the residence, was actually drinking a beer. And then he proceeded to testify at trial regarding his mental illness drugs that he was receiving. So because this psychologist had special knowledge of mental illness and substance abuse, there was a chance that some of his personal attitudes or experiences in the field would influence the jury deliberations. And so I, too, would have excused that juror. Wouldn't that apply to a doctor, too? I don't think so because a family practice doctor ---- Well, my father was one of those, actually, and he did, you know, cuts and bruises and colds. You're saying that's a distinction with a difference. It is a distinction. He hasn't specialized in mental illness. He's doing general practice, which is what my dad was called, actually, most of his career. General practitioners deal with mental illness all the time, much more than psychiatrists do. Go on Google. You'll find that out, you know. Well, maybe I don't see it the same way. And it's not really what one person believes or another believes. It's what was in the mind of this prosecutor, what he knew or what she knew or what she believed. Okay. Your time has expired. Thank you. Thank you. Or what he thought he could get away with. Let's take a couple more. Do you wish to add anything very briefly? I know my time's up. I would just add that I believe one of the jurors who ended up sitting on the jury list is actually a nurse who is a substance abuse counselor, if that helps this Court. So there was somebody who specialized in substance abuse. Was that pointed out to anybody? Well, I mean, this goes back again to Miller-Ell v. Drecke is that it doesn't have to be pointed out. As long as that evidence was there, the factual theories can be raised for the first time. It's okay. Miller-Ell specifically says that. Thank you, Your Honor. The judge has got to be awake. Right. Especially on something this important. Okay. Thank you. Before hearing the next cases, the Court will take a recess. Okay. All rise. This Court will stand in recess for approximately 10 minutes.
judges: Schroeder, Bright , Pregerson